**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

|  |  |
|---|---|
| MATRIX NORTH AMERICAN CONSTRUCTION, INC., | * |
| Plaintiff, | * |
| v. | * Case No.: PWG-17-3763 |
| SNC LAVALIN CONSTRUCTORS, INC., | * |
| Defendant. | * |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Matrix North American Construction, Inc. ("Matrix") filed suit, alleging three breach-of-contract claims and one claim for violating Maryland's Prompt Payment Statute, Md. Code Ann., Real Prop. §§ 9-301 – 9-305, against Defendant SNC Lavalin Constructors Inc. ("SNC"). Compl., ECF No. 1. SNC seeks to stay the proceedings in this Court and to compel arbitration based on the parties' construction contract. Def.'s Mot. to Stay & Compel Arbitration, ECF No. 22.[1] As SNC sees it, the parties' construction contract (the "Contract"), ECF No. 2-2, requires them to settle all disputes by arbitration. Matrix disagrees. Construed as a motion for summary judgment, I will grant SNC's motion because the parties agreed to arbitrate disputes arising from the Contract. This case will be stayed and administratively closed to permit the arbitration to take place.

---

[1] The parties fully briefed this motion. *See* ECF Nos. 22-1, 24, 25. A hearing is not necessary. *See* Loc. R. 105.6.

## Standard of Review

SNC moves to stay the proceedings and compel arbitration under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16.[2] Congress enacted the FAA "to promote the enforceability of arbitration agreements and to make arbitration a more viable option to parties weary of the ever-increasing 'costliness and delays of litigation.'" *Saturn Distribution Corp. v. Williams*, 905 F.2d 719, 722 (4th Cir. 1990) (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 220 (1985) (quoting H.R. Rep. No. 96, 68th Cong., 1st Sess. 2 (1924) (quotation marks omitted))). It "reflects 'a liberal federal policy favoring arbitration agreements.'" *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). If an issue is "'referable to arbitration under an agreement in writing for such arbitration,'" then a stay is mandatory and a motion to compel must be granted. *Id.* (quoting 9 U.S.C. § 3).

When a party moves to compel arbitration, or to dismiss on the basis of a governing arbitration agreement, the Court first must "determine whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 626 (1985). The moving party must show

> (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the [plaintiff] to arbitrate the dispute.

*Adkins*, 303 F.3d at 500–01 (quoting *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991)). While the Court applies the "federal substantive law of arbitrability," *id.* (quoting *Moses*

---

[2] Defendant asserts that the Federal Arbitration Act, governs whether the parties agreed to arbitrate, Def.'s Mem. 3, and Plaintiff does not argue to the contrary, *see* Pl.'s Opp'n 1–4.

*H. Cone Mem'l Hosp.,* 460 U.S. 1, 24 (1983)), it applies "state law governing contract formation" to determine "[w]hether a party agreed to arbitrate a particular dispute," *Adkins,* 303 F.3d at 501.

Relevantly, "'even though arbitration has a favored place, there still must be an underlying agreement between the parties to arbitrate.'" *Id.* at 501 (quoting *Arrants v. Buck,* 130 F.3d 636, 640 (4th Cir. 1997)). Here, Matrix challenges the very existence of a mandatory arbitration clause, rather than its scope.[3] *See* Pl.'s Opp'n 1. Essentially, it argues that a provision allowing for—but not requiring—arbitration is not an agreement to arbitrate. When a party moves to compel arbitration and the validity of the purported arbitration agreement between the parties is disputed, the motion is treated as one for summary judgment. *See Rose v. New Day Fin., LLC*, 816 F. Supp. 2d 245, 251 (D. Md. 2011); *see also id.* at 252 n.5 ("If the parties dispute the existence of an arbitration agreement, the court must 'hear the parties' on the issue, and the party alleged to have violated the arbitration agreement is entitled to a jury trial on the existence of an agreement. Standard summary judgment rules apply." (quoting 9 U.S.C. § 4 and citing *Shaffer v. ACS Gov't Servs., Inc.*, 321 F. Supp. 2d 682, 684 n.1 (D. Md. 2004))). Therefore, I will treat Defendant's motion as one for summary judgment. *See id.*; *see also* Fed. R. Civ. P. 12(d) (requiring conversion of motion to dismiss to motion for summary judgment where, as here, movant attaches affidavits in support that are not integral to the pleadings).

Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or

---

[3] Matrix does not challenge SNC's assertions that the parties had a dispute, the subject of which relates to interstate or foreign commerce and that Matrix refused to arbitrate it, opting for litigation instead. *See* Pl.'s Opp'n 3–5.

other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir. 2013). The question here is "whether a contract to arbitrate was formed," and "unless there is no genuine issue of fact as to whether a contract was formed, the court must submit the question to the jury." *Galloway v. Santander Consumer USA, Inc.*, No. CCB-13-3240, 2014 WL 4384641, at *2 (D. Md. Sept. 3, 2014). To determine whether an arbitration agreement exists, "[c]ourts apply 'ordinary state-law principles that govern the formation of contracts.'" *Id.* (quoting *Noohi v. Toll Bros., Inc.*, 708 F.3d 599, 607 (4th Cir. 2013) (internal quotation marks and citations omitted)).

## Background

SNC entered into the Contract with Matrix. Matrix agreed to be a subcontractor providing labor and materials in constructing the Keys Energy Center in Prince George's County. Def.'s Mem. 2. The Contract states:

> **22. RESOLUTION OF DISPUTES**
>
> 22.2 NEGOTIATION - If the Parties cannot reach resolution on a matter relating to or arising out of the Agreement, the Parties shall endeavor to reach resolution through good faith direct discussions between the Parties' representatives, who shall possess the necessary authority to resolve such matter and who shall record the date of first discussions. If the Parties' representatives are not able to resolve such matter within five (5) business Days of the date of first discussion, the Parties' representatives shall immediately inform senior executives of the Parties in writing that resolution was not affected. Upon receipt of such notice, the senior executives of the Parties shall meet within five (5) Business Days to endeavor to reach resolution. If the dispute remains unresolved after fifteen (15) Days from the date of first discussion or longer period if the Parties agree, the Parties shall submit such matter to the dispute mitigation and dispute resolution procedures selected herein.
>
> 22.3 MEDIATION - the dispute may be settled by a single arbitrator, in accordance with the rules of the American Arbitration Association ("AAA"), which shall use commercially reasonable efforts to make a determination within two (2) weeks of such arbitrator's engagement, which determination shall be in writing and final and binding on the Parties. The parties shall cooperate in

> providing reasonable disclosure of relevant documents. The exclusive venue and place of arbitration shall be in Maryland pursuant to the AAA's Construction Industry Arbitration Rules and Mediation Procedures then in effect. Seller agrees to participate in and be bound by anything between Owner and Construction Manager that relates in any manner to the Work furnished by Seller. Each party shall bear its own expenses, and the costs and fees of the arbitration shall be borne equally by the Parties. The arbitrator shall not award punitive damages nor include interest in any determination[.]
>
> 22.4 LITIGATION - Any Dispute not resolved through negotiation or mediation shall be decided by litigation brought exclusively in either the state or federal court within Prince George's County, Maryland. Construction Manager and Trade Contractor hereby consent to personal jurisdiction in any legal action, suit, or proceeding brought in any court, federal or state, within Prince George's County, Maryland, having subject matter jurisdiction and irrevocably waive, to the fullest extent permitted by applicable laws and the laws of the state of Maryland, any claim or any objection it may now or hereafter have, that venue or personal jurisdiction is not proper with respect to any such legal action, suit, or proceeding brought in such a court in Prince George's County, Maryland, including any claim that such legal action, suit, or proceeding brought in such court has been brought in an inconvenient forum. Each of Owner and Contractor further consents to the service of process out of any of the aforementioned courts in any such action or proceeding by the mailing of copies thereof by registered or certified mail, postage prepaid, to such Party at its address specified herein for the giving of notices, or by such other notice given in accordance with the rules and procedures of such courts.

Contract 57–58, ECF No. 2-2.

Matrix alleges that the Contract had an "initial lump sum price of $8,895,000." Compl. ¶ 9. It contends that SNC increased the scope of and delayed Matrix's work on the project and failed to adjust the Contract price accordingly. *Id.* ¶¶ 10–11. Matrix states, and SNC does not dispute, that the parties then

> attempted to resolve their payment dispute through negotiation per Subpart 22.2 when their representatives held direct discussions on June 1, 2017. When the dispute remained unresolved after these negotiations, Matrix provided notice of its intent to "initiate mediation in accordance with Article 22.3." The parties then mediated the dispute on November 7-8, 2017, but failed to resolve it. Having failed to resolve the dispute through negotiation or mediation, Matrix filed this action in state court in Prince George's County, Maryland in accordance with Subpart 22.4.

Pl.'s Opp'n 2 (internal citations omitted).

SNC now has moved to stay the proceedings in this Court and to compel arbitration pursuant to § 22.3 of the Contract, arguing that the dispute is within the scope of the arbitration provision to which the parties agreed to be bound. Def.'s Mem. 1.

**Discussion**

Under Maryland law,[4] a contract exists where there is "'mutual assent (offer and acceptance), an agreement definite in its terms, and sufficient consideration.'" *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769 (4th Cir. 2013) (quoting *CTI/DC, Inc. v. Selective Ins. Co. of Am.*, 392 F.3d 114, 123 (4th Cir. 2004)). Here, the parties dispute whether the Contract contains a provision mandating arbitration. Def.'s Mem. 4–5; Pl.'s Opp'n 1.

SNC contends that

> there is a written arbitration agreement which applies to all matters "relating to or arising out of the" Subcontract . . . . Plaintiff's claims all relate to SNC's alleged failures to make payments allegedly due to Matrix under the Subcontract, and thus fall squarely within the agreement to arbitrate "relating to or arising out of the" Subcontract. *See Wachovia Bank, N.A. v. Schmidt*, 445 F.3d 762, 767 (4th Cir. 2006) ("We have consistently held that an arbitration clause encompassing all disputes 'arising out of or relating to' a contract embraces 'every dispute between the parties having a significant relationship to the contract regardless of the label attached to a dispute.'") (citation omitted).

Def.'s Mem. 4–5. As SNC reads the Contract, because the parties' initial informal discussions failed, arbitration was required and litigation was not an option. According to SNC, litigation is an alternative approach for resolving matters outside the scope of the arbitration clause or to "confirm, modify, or vacate an arbitration award." Def.'s Reply 7.

Matrix argues that the parties envisioned "a three-step dispute resolution procedure" and that it satisfied the first two steps, such that it could bring litigation in this Court at the third step.

---

[4] The parties agree that Maryland law applies. *See* Def.'s Mem. 8; Pl.'s Supp. Opp'n 3.

6

Pl.'s Opp'n 1–2.[5] According to Matrix, the first step is negotiation, the second step is mediation, and the third step is litigation. *Id.* at 4 (arguing that "Subpart 22.4 is appropriately titled 'LITIGATION,' begins with a complete sentence, and is properly punctuated" and "clearly references the preceding two steps, NEGOTIATION and MEDIATION, and expressly mandates that disputes not resolved through those steps 'shall' be litigated").

The Contract states that when "direct discussions" and negotiations fail, "the Parties *shall* submit such matter to the dispute mitigation and dispute resolution procedures selected herein" (what Matrix refers to as the second step). Contract § 22.2. Matrix relies on the heading of § 22.3, "MEDIATION," as controlling what the next step entails, Pl.'s Opp'n 4, yet the Contract clearly states that its headers are "for convenience of reference only and shall not in any manner affect the construction, meaning or effect" of any contractual term. Contract § 24.5. Consequently, I must look at the text of the contract provisions themselves for their meaning. *See id.* § 24.5.

The Contract does not define "dispute mitigation and dispute resolution procedures." Contract language is ambiguous "if, to a reasonably prudent person, the language used is susceptible of more than one meaning and not when one of the parties disagrees as to the meaning of the subject language." *Pac. Indem. Co.*, 488 A.2d at 489. When "there is a *bona fide* ambiguity in the contract's language or legitimate doubt as to its application under the circumstances . . . the contract [is] submitted to the trier of the fact for interpretation." *Plymouth Rubber*, 569 A.2d at 1296. Nonetheless, "[t]he court may construe an ambiguous contract if there is no factual dispute in the evidence." *Pac. Indem. Co.*, 488 A.2d at 489.

---

[5] Neither party argues that further negotiations pursuant to § 22.2 are at issue and neither views the "mediation" that Plaintiff alleges occurred on November 7–8, 2017 as arbitration.

The sentence following the reference to submission to "dispute mitigation and dispute resolution procedures selected [in the Contract]"—the first sentence of § 22.3—states that the dispute "may be settled by a single *arbitrator*," whose decision will be written and binding on the parties, and it does not provide for any alternative procedures. *Id.* § 22.3 (emphasis added). The entire paragraph discusses binding arbitration, without once referencing non-binding mediation. *See id.* Thus, the dispute mitigation and dispute resolution procedures requirement is not susceptible to the meaning Matrix assigns it—that it allows for mediation as an alternative dispute resolution method to arbitration.[6] Indeed, this meaning would require "arbitration" to be viewed as a form of mediation, whereas arbitration (which is binding) is distinct from mediation (which is not). Thus, this language, albeit confusing, is not ambiguous, because it is susceptible to only one meaning – that the step following informal negotiation is mediation. *See Pac. Indem. Co.*, 488 A.2d at 489.

Since the contract does not include mediation as an alternative to arbitration, the next critical question is whether it compels arbitration of all disputes not resolved through negotiation,

---

[6] The parties appear to have adopted some, but not all, of the language from a form contract, known as the 2007 ConsensusDocs 200 General Conditions ("Consensus Docs"), "an alternative to the form documents long published by the American Institute of Architects (AIA)." Larry D. Harris & Brian M Perlberg, *Advantages of the ConsensusDOCS Construction Contracts*, Construction Lawyer, Winter 2009, at 5 ("*Advantages of ConsensusDOCS*"). Specifically, the parties adopted the exact language in the form contract's "Direct Discussions" section and merely retitled it "Negotiation." *See* 7 Bruner and O'Connor on Construction Law § 21:3 (June 2018). According to Bruner and O'Connor, "ConcensusDocs [sic] 200 General Conditions (2007), which rejected binding arbitration as the mandated ADR method, provided for disputes to be resolved through structured negotiation, dispute review boards, project neutrals or mediation as a pre-condition to proceeding to either voluntary arbitration or litigation." *Id.* n.11. However, ConsensusDocs contains provisions on mitigation procedures, mediation (through a non-binding project neutral or dispute review board), and binding dispute resolution (litigation or arbitration), which the Contract at issue here does not include. *See* Harris & Perlberg, *Advantages of ConsensusDOCS*, at 6. Regardless, the Court is not considering whether the parties intended to adopt the ConsensusDocs form, but rather will interpret the actual contract the parties signed and is before the Court.

or, alternatively, permits the parties to elect whether to arbitrate or litigate any unresolved disputes. The answer turns on the meaning of the language that any dispute "may" be settled by an arbitrator, in accordance with the rules of the American Arbitration Association. Contract, § 22.3. Thus, the issue is whether use of the word "may" is permissive, or mandatory, in this context.

The Contract states that any dispute not resolved by negotiation "*may* be settled by a single arbitrator." Contract § 22.3 (emphasis added). *Austin v. Owens-Brockway Glass Container, Inc.*, 78 F.3d 875 (4th Cir. 1996), provides guidance. There, the plaintiff argued that arbitration was not mandatory, but permissive because the collective bargaining agreement clause read that "[a]ll disputes not settled pursuant to the procedures set forth in Article 31, Grievance Procedures, may be referred to arbitration." 78 F.3d at 879. The Fourth Circuit interpreted the language "may be referred" to mandate that arbitration was obligatory and held:

> [T]he purpose of the word "may" in this section of the collection bargaining agreement is to give an aggrieved party the choice between arbitration and abandonment of his claim, he "may" either arbitrate or abandon the claim. The interpretation urged by [the plaintiff] would render the arbitration provision meaningless for all practical purposes. If the parties to such an agreement intended for arbitration to be permissive, there would be no reason to include Article 32, the arbitration provision in the contract, for the parties to an existing dispute could always voluntarily submit it to arbitration. Almost identical words ("either party may request arbitration") in a fact situation indistinguishable from that at hand has received the same construction we place upon it by the Eighth Circuit in *Bonnot v. Congress of Independent Unions, Local No. 14,* 331 F.2d 355, 359 (8th Cir.1964), which followed *Deaton Truck Line, Inc. v. Local Union 612,* 314 F.2d 418, 422 (5th Cir.1962). See also *American Italian Pasta Co. v. Austin Co.,* 914 F.2d 1103, 1104 (8th Cir.1990).

*Id.* Following the Fourth Circuit's precedent, Judge Bredar of this Court held arbitration was mandatory when interpreting a contract provision that read that "[a]ny grievance which is not resolved in Step 3 to the Union's satisfaction *may* be submitted to arbitration." *Williams v. Tero Tek Int'l, Inc.*, No. JKB-10-2752, 2011 WL 2174505, at *1–2 (D. Md. June 1, 2011) (emphasis

in original) ("The Court's rationale [in *Austin*] was that, if the parties intended arbitration to be permissive, this provision would be meaningless since they could always submit to voluntary arbitration. No significant difference is perceived between the language before the *Austin* Court and the language in the instant case.") (internal citations omitted). Judge Bredar added that because the language of the agreement also included that the arbitrator's decision was final and binding, the Court was without jurisdiction to entertain the claims in that case. *Id.*

There is not a "significant difference" between the language of the Contract here and those in *Austin* and *Williams*. The Contract between SNC and Matrix states that

> the dispute *may* be settled by a single arbitrator, in accordance with the rules of the American Arbitration Association ("AAA"), which shall use commercially reasonable efforts to make a determination within two (2) weeks of such arbitrator's engagement,[7] which determination *shall be in writing and final and binding on the Parties*.

Contract § 22.3 (emphasis added). As in *Williams* and *Austin*, the parties clearly agreed to arbitrate their disputes, and therefore, this Court may not resolve any claims "relating to or arising out of the Agreement," unless the parties first complete arbitration and there is subsequent litigation to challenge or enforce the decision of the arbitrator. *See Austin*, 78 F.3d at 879; *Williams*, 2011 WL 2174505, at *1–2; Contract § 22.2. As the parties do not disagree that this dispute is "relating to or arising out of the Agreement," the Court is without jurisdiction to entertain Matrix's claims and they must be submitted to arbitration.

---

[7] Matrix also argues that this dispute is too complex to be determined within two weeks, and therefore, the parties did not intend for it to be arbitrated. Pl.'s Opp'n 4. Yet, the Contract does not mandate that an arbitrator make a decision within two weeks, but rather that the arbitrator "use commercially reasonable efforts" to do so. Contract § 22.3. This language clearly indicates that if it were not commercially reasonable, the arbitrator would not be bound to the two-week deadline. *See id.*

It is true that the foregoing construction of § 22.3 of the Contract calls into question exactly when, if ever, litigation would be appropriate under § 22.4, if all disputes arising out of the Contract must be resolved through binding arbitration. Importantly,

> Maryland courts adhere to the principle of the objective interpretation of contracts ...; *i.e.*, if the language employed is unambiguous, 'a court shall give effect to its plain meaning and there is no need for further construction by the court' . . .We ... attempt to construe contracts as a whole, to interpret their separate provisions harmoniously, so that, if possible, all of them may be given effect.

*City of Coll. Park v. Precision Small Engines*, 161 A.3d 728, 734 (Md. Ct. Spec. App. 2017) (quoting *Walker v. Dep't of Human Res.*, 842 A.2d 53 (2004)); *see also Sagner v. Glenangus Farms, Inc.*, 198 A.2d 277, 283 (Md. 1964) ("A recognized rule of construction in ascertaining the true meaning of a contract is that the contract must be construed in its entirety and, if reasonably possible, effect must be given to each clause so that a court will not find an interpretation which casts out or disregards a meaningful part of the language of the writing unless no other course can be sensibly and reasonably followed.").

Given the Court's finding that the parties are required to arbitrate, Section 22.4 is then susceptible to only one meaning. While the Contract does provide for litigation, it is reserved for "[d]ispute[s] not resolved through negotiation [i.e., the procedures discussed in § 22.2] or mediation [i.e., the procedures discussed in § 22.3, which must be construed to require arbitration]." Contract § 22.4. The most direct way to harmonize all three Contract sections is to read § 22.4 to permit litigation when a party either files suit to enforce the arbitrator's award or to vacate it. In such circumstances, § 22.4 then dictates the forum where such a suit is to be filed.

Accordingly, I will grant Defendant's motion to stay proceedings and compel arbitration, treated as a motion for summary judgment.[8]

**ORDER**

Accordingly, it is, this 2nd day of August, 2018, hereby ORDERED that

1. Defendant's Motion to Stay Proceedings and Compel Arbitration, ECF No. 22, treated as a motion for summary judgment, IS GRANTED;

2. The case is stayed pending the outcome of arbitration; and

3. The Clerk is ORDERED to ADMINISTRATIVELY CLOSE the CASE.

           /S/
           Paul W. Grimm
           United States District Judge

jml

---

[8] Matrix also argues that by agreeing to jurisdiction in a state or federal court in Prince George's County, SNC has waived the right to make its motion to compel arbitration. Pl.'s Opp'n 6. While a party may waive its right to arbitrate, the clear language of the Contract does not do so. The parties agreed that, should a case be brought before a Court, it must be brought within a state or federal court sitting in Prince George's County. This language merely is a forum selection clause. *See* Contract §§ 22.3–22.4; *see also UBS Fin. Servs., Inc. v. Carillion Clinic*, 706 F.3d 319, 329 (4th Cir. 2013) (finding that similar language was a forum selection clause and not language that "superseded, displaced, or waived" the right to arbitrate); *Shebby v. Stifel, Nicolaus & Co., Inc.*, No. DKC-17-2847, 2018 WL 638291, at *5 (D. Md. Jan. 31, 2018); *Choice Hotels, Int'l, Inc. v. Patel*, No. PWG-16-1316, 2017 WL 660803, at *2 (D. Md. Feb. 17, 2017) (holding when a clause "provides that '[j]udgment on the arbitration award may be entered in any court having jurisdiction' and designates Maryland as the location for any arbitration proceedings" it acts as a forum-selection clause establishing personal jurisdiction).